Mr. Chief Justice Shahkey
delivered the opinion of the court.
The appellants, as administrators de bonis non of the goods and chattels of Hiram Coffee, deceased, filed their bill in the superior court of chancery against the respondents, who were formerly executors of Coffee’s will. McRaven, who had transacted most of the business, it seems, from a record of the probate court, presented his final account as executor, at a special term of the probate court, called for that purpose on the 17th of Jauuary, 1839, when the account was allowed and recorded. At the regular term of the court, on the fourth Monday in January, 1S39, this entry appears to have been made, to wit: “In open court came Joseph A. McRaven, one of the executors of Hiram Coffee, deceased, who, having made publication according to law of his intention of making final settlement with the probate court, at July term, 1838, and said notice having been continued by order of the court from term to term until the 17th of January, 1839, when at a special term of said court, held for that purpose, the said executor produced to said court the same final settlement, together with all necessary legal vouchers ; upon examination thereof by the judge of said court, as is provided by law, and the said judge having been satisfied with the same, examined, stated, and reported said account, and ordered the same to be received ; he, the said executor, is hereby discharged from further liability as executor.”
The complainants set out by stating that Coffee died, leaving a considerable estate in his own right, the debts due amounting *141 to sixty or eighty thousand dollars, besides a considerable amount invested in partnership with McRaven. In support of this allegation, the inventory returned by the executor is referred to. The bill alleges that the mismanagement of McRaven was so glaring as to induce the complainants to take measures for his removal, in which they succeeded, though he was reluctant to' give up the trust. The final account of McRaven, it is said, was suddenly passed without any knowledge of the many inaccuracies it contained, the complainants being uninformed whether the charges were just or not. To enumerate the various charges in the bill is unnecessary. Most of them, if true, show mere acts of maladministration, such as failing to account for the sum of three thousand dollars, which he received of Coffee just before his death ; failing to render a true inventory of the slaves, and with having converted the cotton crops and the proceeds of a wood yard to his own use without accounting. To these and all similar allegations there is a very conclusive answer. The complainants seek relief in their character of administrators. For a devastavit or maladministration, the heirs, or distributees and legatees, may have recourse against McRa-ven if not barred, but the administrators de bonis non can have no such recourse. They are to administer the effects left unad-ministered. This is the extent of their commission. So it was held by the court in the case of Kelsy’s Administrators v. Smith, 1 How. 68. See also H. & H. Dig. 397, sec. 41.
The principal allegation is that McRaven still retains, and refuses to deliver, notes, accounts, &c., which belong to the estate, to the amount of sixty-four thousand dollars. In his final settlement it seems McRaven rendered a schedule of these claims, or at least in his account he referred to such schedule, as being returned, and reported the claims either as insolvent or in suit ; but it is averred that he failed to file the notes, except a very few, which are worthless; and it is also averred that he failed to file the schedule, although it is referred to in his account as filed. These claims, it is said, he is still proceeding to collect or use, and the complainants pray that he may be enjoined from such collection, and decreed to deliver up the notes. *142 This charge is very general, and even vagu.e. No instance is given in which he has collected, or attempted to collect, anything.
Whatever effects, or dioses in action, may remain unadminis-tered, the complainants are entitled to, they being the proper persons to make the collections. But MeRaven meets this charge by demurring to the bill, and by pleading the decree of the probate court, as a final accounting for everything; and the decisions of this court fully sustain such a plea, on the ground that the decision of a court of competent jurisdiction is conclusive between the parties, until reversed. Griffith’s Administrators v. Vertner and wife, 5 How. 736. The law requires that an executor or administrator shall give forty days’ notice of his intention, to make final settlement. This is constructive notice to all parties interested, who thus have an opportunity of contesting the accounts. But besides this constructive notice, the complainants show by their bill that they had' actual notice ; MeRaven was removed from office at their instance, as parties in interest, before they became administrators. They were the actors, the parties who instituted the proceeding which ended in the executors’ final settlement and removal. How then can they complain that his account was suddenly passed ? The record shows the contrary. It shows that a special court was called for the purpose, on the 17th of January, notice having been given in July, and that the account and accompanying vouchers were examined, and approved by the court. It is most unaccountable that the complainants should have been surprised and uninformed as to an account, which they had forced the executor to render, in consequence of having discovered that he was mismanaging the estate. If they had discovered such mismanagement, it is strange that when the executor came to render an account for those acts of mismanagement, when they must be approved or disapproved, they should have been surprised and uninformed as to the correctness of the charges. It may be true, but if so, it shows a degree of negligence which is without excuse. They refer to his inventory for the amount of debts due the estate, and to his final account for the amount which was *143 reported insolvent and in suit, the evidences of which, they say he still retains. It seems, then, that those claims were not omitted in his final account, and of necessity the court must have passed upon the report which he made, concerning them. He had given in an inventory, which furnished the court with a criterion for charging him. He was bound to account for everything inventoried. When he came to settle, he reported a part of the debts so inventoried as insolvent; and the court must have been satisfied, from evidence, that the debtors were insolvent, otherwise he would have been chargeable. If the court erred in this particular, it was an error which might have been corrected in the proper way. But it is said that he failed to file the evidences of debt. This, too, was an error which the court could have corrected, by ordering that they should be filed, but no application was then made. The judgment of the court discharging him, implies that it was founded on proper evidence, that every prerequisite to entitle the executor to his discharge, had been performed, and, like the judgment of any other court, it is conclusive, unless attacked for fraud, which in this instance is denied by answer, and the cause was submitted on the bill, the demurrer, and other pleadings, without any proof. Altogether this seems like an effort to review an administration by bill in chancery, after it has been finally settled in the probate court, where the parties who are now complaining were present in court, and had a full and fair opportunity of being heard.
There is one ground assumed in the bill which might, if properly charged, entitle the complainants to an injunction. It is that McRaven, in 1840, filed a bill in the superior court of chancery, to enforce the lien on slaves which had been sold by him, as administrator, with a view, as it is said, of appropriating the money to his own use. But it does not appear what has become of this proceeding, or how it terminated. He may have failed, or the complainants may have been substituted as complainants. So if McRaven is proceeding to collect other debts, which properly belong to the estate, he may be prevented, as the law substitutes the complainants to all rights which may be neces *144 sary to prosecute for claims due the estate. But the charge on this subject is vague and uncertain, not specifying any instance of an attempt to collect. And it is moreover to be observed, that McRaven was allowed a large sum for his commissions ; if that has not been paid, we cannot say that he is not entitled to retain any money which may come to his hands from claims due the estate.
The decree of the chancellor must be affirmed.